**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

---------------------------------------------------------------- x

DAXING MOU, and
ZANLIAN WANG,

                          Plaintiffs,

                v.

YI STAR LLC
        d/b/a Dallas Spicy Chinese Cuisine
        d/b/a Dallas Panda Chinese Cuisine
        d/b/a Sichuan Joy
        d/b/a O My Baobao
        d/b/a Oh My Baobao
        d/b/a Hawaii Poke & Boba,
DALLAS PANDA CHINESE CUISINE LLC
        d/b/a Dallas Spicy Chinese Cuisine,
YI LI, and
JINLUN LI
        a/k/a Patrick Li,

                      Defendants.

---------------------------------------------------------------- x

Case No. 26-cv-00149

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION**
**COMPLAINT**

Plaintiffs DAXING MOU (hereinafter "Mou") and ZANLIAN WANG (hereinafter "Wang;" hereinafter collectively with Mou, "Plaintiffs"), by and through their attorneys, Tiffany Troy of Troy Law, PLLC (and John Troy and Aaron B. Schweitzer of Troy Law, PLLC, to be admitted *pro hac vice*), hereby bring this Complaint against Defendants YI STAR LLC d/b/a Dallas Spicy Chinese Cuisine d/b/a Dallas Panda Chinese Cuisine d/b/a Sichuan Joy d/b/a O My Baobao d/b/a Oh My Baobao d/b/a Hawaii Poke & Boba (hereinafter "Yi Star"), DALLAS PANDA CHINESE CUISINE LLC d/b/a Dallas Spicy Chinese Cuisine (hereinafter "DPCC;" hereinafter collectively with Yi Star, "LLC Defendants"), YI LI (hereinafter "Ms Li"), and JINLUN LI a/k/a Patrick Li (hereinafter "Mr. Li;" hereinafter collectively with Ms Li, "Individual Defendants;" Individual Defendants hereinafter collectively with LLC Defendants, "Defendants"), and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action, on behalf of themselves and other similarly situated employees of Defendants' restaurants "Sichuan Joy," located at 8004 Denton Highway, #150, Watauga, TX 76148, and "369 BBQ," located at 4140 Legacy Drive, Suite 310, Plano, TX 75024, against Defendants for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and/or practices.

2.      Mou alleges pursuant to FLSA, 29 U.S.C. §§ 206(a)(1)(C), 207(a)(1), 216(b) that he is entitled to recover from the Defendants: (1) unpaid minimum wages; (2) unpaid overtime wages; (3) liquidated damages equal to the sum of unpaid minimum wages and unpaid overtime wages, or prejudgment interest thereon; (4) post-judgment interest; and (5) reasonable attorneys' fees and costs.

3.      Wang alleges pursuant to FLSA, 29 U.S.C. §§ 203(m), 206(a)(1)(C), 207(a)(1), 216(b) that she is entitled to recover from the Defendants: (1) unpaid minimum wages; (2) unpaid overtime wages; (3) withheld tips; (4) liquidated damages equal to the sum of unpaid minimum wages, unpaid overtime wages, and withheld tips, or prejudgment interest thereon; (5) post-judgment interest; and (6) reasonable attorneys' fees and costs.

## JURISDICTION & VENUE

4.      The court has subject matter jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. As set forth more fully below, LLC Defendants operated a covered enterprise under the FLSA, inasmuch as they engaged in interstate and/or foreign commerce, had more than $500,000.00 in gross annual revenue during the relevant period, and Plaintiffs and other employees handled goods that had been moved in commerce; and Individual Defendants were Plaintiffs' employers jointly with LLC Defendants.

ASchweitzer                                              2                                              Complaint

5.      Venue is proper in the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1391, because Defendants reside and conduct business in the Eastern District of Texas, and because the acts and omissions giving rise to the claims alleged herein took place within the Eastern District of Texas.

## PLAINTIFFS

### *DAXING MOU*

6.      Mou is a resident of Denton County, Texas.

7.      Mou was employed by Defendants to work as a so-called "fry wok," (*i.e.*, a stir-fry cook) at Sichuan Joy from on or about April 28, 2025 through on or about August 10, 2025; and at 369 BBQ from on or about August 11, 2025 through on or about September 8, 2025.

8.      Mou was a manual worker not exempt from the overtime pay provisions of the FLSA, and in particular was not an executive or a creative professional.

9.      Mou's primary duty was cooking dishes the recipes for which had been created by others, and in particular was not either creating dishes or supervising or controlling the work of at least two other employees.

10.     Mou did not have authority to hire, promote, discipline, or fire other employees, and did not make recommendations to Defendants about the hiring, promotion, disciplining, or firing of other employees, that were given particular weight or otherwise.

### *ZANLIAN WANG*

11.     Wang is a resident of Denton County, Texas.

12.     Wang was employed by Defendants to work as a server at 369 BBQ from on or about August 18, 2025 through on or about September 8, 2025.

13.     Wang was a manual worker not exempt from the overtime pay provisions of the FLSA, and in particular was not an executive.

14.     Wang's primary duty was serving dishes to customers, and in particular was not supervising or controlling the work of at least two other employees.

15.     Wang did not have authority to hire, promote, discipline, or fire other employees, and did not make recommendations to Defendants about the hiring, promotion, disciplining, or firing of other employees, that were given particular weight or otherwise.

## DEFENDANTS

### YI STAR LLC

16.     Yi Star is a domestic limited liability company with a registered office and registered address for service of process at 2330 Soaring Star Lane, Frisco, TX 75036 and principal places of business at 8004 Denton Highway, #150, Watauga, TX 76148 and 4140 Legacy Drive, Suite 310, Plano, TX 75024.

17.     Yi Star was, throughout the period relevant to this lawsuit, a business with gross annual revenue in excess of five hundred thousand dollars ($500,000.00) per year.

18.     Yi Star was, throughout the period relevant to this lawsuit, a business engaged in interstate or foreign commerce, including in ingredients for various dishes, whose employees, including Mou, handled goods moved in commerce, including ingredients and cleaning supplies.

### DALLAS PANDA CHINESE CUISINE LLC

19.     DPCC is a domestic limited liability company with a registered office at 2330 Soaring Star Lane, Frisco, TX 75036, a registered address for service of process at 8105 Rasor Boulevard, Suite 298, Plano, TX 75024 and a principal place of business at 4140 Legacy Drive, Suite 310, Plano, TX 75024.

20.     DPCC was, throughout the period relevant to this lawsuit, a business with gross annual revenue in excess of five hundred thousand dollars ($500,000.00) per year.

21.     DPCC was, throughout the period relevant to this lawsuit, a business engaged in interstate or foreign commerce, including in ingredients for various dishes, whose employees, including Plaintiffs, handled goods moved in commerce, including ingredients and cleaning supplies.

### *YI LI*

22.     Upon information and belief, Ms Li is a resident of Denton County, Texas.

23.     Ms Li is a managing member of Yi Star.

24.     Ms Li is a managing member of DPCC.

25.     Ms Li is Mr. Li's mother.

26.     Ms Li had and exercised authority to hire and fire employees of Yi star and DPCC.

27.     Ms Li and Mr. Li, together, hired Mou.

28.     As managing member of Yi Star and DPCC, Ms Li delegated to Mr. Li the right and responsibility to supervise Plaintiffs', and other employees', work at Sichuan Joy and 369 BBQ.

29.     Ms Li, along with Mr. Li, kept and maintained such employee records as were kept and maintained on behalf of Yi Star and DPCC.

### *JINLUN LI*

30.     Upon information and belief, Mr. Li is a resident of Denton County, Texas.

31.     Mr. Li is a director and manager of Yi Star.

32.     Mr. Li is Ms Li's son.

33.     Mr. Li had and exercised authority to hire and fire employees of Yi Star and DPCC.

34.     Mr. Li and Ms Li, together, hired Mou.

35.     Mr. Li personally supervised Plaintiffs's, and other employees', work at Sichuan Joy and 369 BBQ on a regular, day-to-day basis, on behalf of Ms Li, the managing member of Yi Star and DPCC.

36.     Mr. Li calculated Mou's salary, signed Mou's paychecks on behalf of Yi Star, and gave Mou his pay.

37.     Mr. Li, along with Ms Li, kept and maintained such employee records as were kept and maintained on behalf of Yi Star and DPCC.

### STATEMENT OF FACTS

***YI STAR AND DPCC OPERATE AS A SINGLE INTEGRATED ENTERPRISE***

38.     Yi Star and DPCC share common owners, including Ms Li.

39.     Yi Star and DPCC have common managers who have and exercise authority over employees' conditions of employment, including Individual Defendants.

40.     Yi Star and DPCC share a registered office, namely 2330 Soaring Star Lane, Frisco, TX 75036.

41.     Yi Star and DPCC centralize labor relations, including but not limited to decision-making regarding hiring, firing, promotion, and discipline, payroll processing, and recordkeeping such as it was, in the persons of Individual Defendants, at 2330 Soaring Star Lane, Frisco, TX 75036.

42.     2330 Soaring Star Lane, Frisco, TX 75036 is owned by Individual Defendants and upon information and belief is Individual Defendants' primary residence.

43.     Yi Star operated Sichuan Joy from the beginning of the period relevant to this lawsuit, through about August 10, 2025.

44.     Yi Star and DPCC together operated 369 BBQ from about August 11, 2025 through the end of the period relevant to this lawsuit.

45.    Yi Star registered to do business under the name "Dallas Panda Chinese Cuisine" on July 21, 2025.

46.    DPCC was incorporated on August 6, 2025.

47.    Yi Star and DPCC both registered to do business as "Dallas Spicy Chinese Cuisine" on October 1, 2025.

### *DAXING MOU*

48.    Mou was employed by Defendants to work as a so-called "fry wok," (*i.e.*, a stir-fry cook) at Sichuan Joy from on or about April 28, 2025 through on or about August 10, 2025; and at 369 BBQ from on or about August 11, 2025 through on or about September 8, 2025.

49.    Throughout his employment, at both Sichuan Joy and at 369 BBQ (except the workweek beginning September 8, 2025, when he only worked Monday and 9.5 hours), Mou regularly worked about 57 hours per week: from about 10:00 AM through about 3:00 PM, and from about 4:30 PM through about 9:00 PM, Mondays, Wednesdays, Thursdays, Fridays, Saturdays, and Sundays (with Tuesdays off).

50.    Mr. and Ms Li promised Mou that he would be compensated on the following basis: Mr. and Ms Li would decide Mou's base monthly salary, on the expectation that it would compensate Mou for 26 workdays per month; at the end of the month, Defendants would divide Mou's base monthly salary by 26 expected workdays per month, multiply the result thus obtained by the number of days he had actually worked in the month, round the result thus obtained to the nearest dollar, and pay him the result thus finally obtained by a combination of check and cash.

51.    For the months of April 2025 through July 2025, Mou's base monthly salary was $6,800.00 per month.

52.    For the months of August 2025 and September 2025, Mou's base monthly salary was $7,500.00 per month.

53.     Mr. and Ms Li raised Mou's base salary to entice him to continue working, and move to 369 BBQ, when the Defendants' business moved from Sichuan Joy to 369 BBQ.

54.     For April 2025, Mou worked 2 days (April 28 and 30; off Tuesday April 29), and was paid $523.00 in cash ($6,800.00/month / 26 expected workdays/month * 2 workdays/month, rounded to the nearest dollar).

55.     For May 2025, Mou worked 27 days (off Tuesdays May 6, 13, 20, and 27), and was paid a total of $7,062.00 ($6,800.00/month / 26 expected workdays/month * 27 workdays/month, rounded to the nearest dollar): $1,300.00 by check and $5,762.00 in cash.

56.     For June 2025, Mou worked 26 days (off Tuesdays June 3, 10, 17, and 24), and was paid a total of $6,800.00 ($6,800.00/month / 26 expected workdays/month * 26 workdays/month, rounded to the nearest dollar): $1,300.00 by check and $5,500.00 in cash.

57.     For July 2025, Mou worked 26 days (off Tuesdays July 1, 8, 15, 22, and 29), and was supposed to be paid a total of $6,800.00 ($6,800.00/month / 26 expected workdays/month * 26 workdays/month, rounded to the nearest dollar); but was only paid $1,300.00 by check, and was not paid the remaining $5,500.00, either by check or in cash.

58.     For August 2025, Mou worked 27 days (off Tuesdays August 5, 12, 19, and 26), and was supposed to be paid a total of $7,788.00 ($7,500.00/month / 26 expected workdays/month * 27 workdays/month, rounded to the nearest dollar); but was not paid anything.

59.     For September 2025, Mou worked 7 days (September 1, 3, 4, 5, 6, 7, and 8; off Tuesday September 2), and was supposed to be paid a total of $2,019.00 ($7,500.00/month / 26 expected workdays/month * 7 workdays/month, rounded to the nearest dollar); but was not paid anything.

60.     Mou's compensation in April 2025 ($523.00/month * 12 months/year / 52 weeks/year / 57 hours/week = $2.12/hour), July 2025 ($1,300.00/month * 12 months/year / 52 weeks/year / 57 hours/week = $5.26/hour), August 2025 ($0.00/month * 12 months/year / 52 weeks/year / 57 hours/week = $0.00/hour), and September 2025 ($0.00/month * 12 months/year / 52 weeks/year / 57 hours/week = $0.00/hour) amounted to less per hour than the federal minimum hourly wage of $7.25/hour.

61.     Mou's compensation in May 2025 amounted to a regular hourly wage of $28.59 per hour ($7,062.00/month * 12 months/year / 52 weeks/year / 57 hours/week = $28.59/hour).

62.     Mou's compensation in June 2025 amounted to a regular hourly wage of $27.53 per hour ($6,800.00/month * 12 months/year / 52 weeks/year / 57 hours/week = $27.53/hour).

63.     Throughout his employment, Mou's compensation failed to include additional pay, at one-half times the greater of the federal minimum wage and his regular hourly wage, for his hours worked in excess of 40 hours per week.

64.     Over the course of his employment, Defendants failed to pay Mou $15,307.00 of the wages they had promised to pay him ($5,500.00 for July 2025; $7,788.00 for August 2025; and $2,109.00 for September 2025).

65.     Defendants did not pay Mou his $15,307.00 in unpaid wages on or before his last regular payday, to wit, September 30, 2025.

66.     Defendants have not as of this writing paid Mou his $15,307.00 in unpaid wages.

***ZANLIANG WANG***

67.     Wang was employed by Defendants to work as a server at 369 BBQ from on or about August 18, 2025 through on or about September 8, 2025.

68.     The workweek beginning August 18, 2025, Wang worked about 43 hours: from about 10:00 through between about 9:30 PM and about 10:00 PM (on average, about 9:45 PM),

with 1 hour of break time per day, on Thursday, August 21, 2025, Friday, August 22, 2025, Saturday, August 23, 2025, and Sunday, August 24, 2025.

69.    The workweek beginning August 25, 2025, Wang worked about 64.5 hours: from about 10:00 through between about 9:30 PM and about 10:00 PM (on average, about 9:45 PM), with 1 hour of break time per day, on Monday, August 25, 2025, Wednesday, August 27, 2025, Thursday, August 28, 2025, Friday, August 29, 2025, Saturday, August 30, 2025, and Sunday, August 31, 2025.

70.    The workweek beginning September 1, 2025, Wang worked about 64.5 hours: from about 10:00 through between about 9:30 PM and about 10:00 PM (on average, about 9:45 PM), with 1 hour of break time per day, on Monday, September 1, 2025, Wednesday, September 3, 2025, Thursday, September 4, 2025, Friday, September 5, 2025, Saturday, September 6, 2025, and Sunday, September 7, 2025.

71.    The workweek beginning September 8, 2025, Wang worked about 10.75 hours: from about 10:00 through between about 9:30 PM and about 10:00 PM (on average, about 9:45 PM), with 1 hour of break time per day, on Monday, September 8, 2025.

72.    Mr. and Ms Li promised Wang that she would be compensated on the following basis: Mr. and Ms Li would decide Wang's base monthly salary, on the expectation that it would compensate Wang for 26 workdays per month; at the end of the month, Defendants would divide Wang's base monthly salary by 26 expected workdays per month, multiply the result thus obtained by the number of days she had actually worked in the month, round the result thus obtained to the nearest dollar, and pay her the result thus finally obtained in cash.

73.    Throughout her employment, Wang's base monthly salary was $7,000.00 per month.

74.     For August 2025, Wang worked 10 days (August 21, 22, 23, 24, 25, 27, 28, 29, 30, and 31), and was paid $2,692.00 in cash ($7,000.00/month / 26 expected workdays/month * 10 workdays/month, rounded to the nearest dollar).

75.     For September 2025, Wang worked 7 days (September 1, 3, 4, 5, 6, 7, and 8), and was supposed to be paid a total of $1,885.00 ($7,000.00/month / 26 expected workdays/month * 7 workdays/month, rounded to the nearest dollar); but was not paid anything.

76.     Wang's compensation in September 2025 (for week beginning September 1, 2025, $0.00/month * 12 months/year / 52 weeks/year / 64.5 hours/week = $0.00/hour; for week beginning September 8, 2025, $0.00/month * 12 months/year / 52 weeks/year / 10.75 hours/week = $0.00/hour) amounted to less per hour than the federal minimum hourly wage of $7.25/hour.

77.     Wang's compensation for the week beginning August 18, 2025 amounted to a regular hourly wage of $14.45 per hour ($2,692.00/month * 12 months/year / 52 weeks/year / 43 hours/week = $14.45/hour).

78.     Wang's compensation for the week beginning August 25, 2025 amounted to a regular hourly wage of $9.63 per hour ($2,692.00/month * 12 months/year / 52 weeks/year / 64.5 hours/week = $9.63/hour).

79.     Throughout her employment, Wang's compensation failed to include additional pay, at one-half times the greater of the federal minimum wage and her regular hourly wage, for her hours worked in excess of 40 hours per week.

80.     Over the course of her employment, Defendants failed to pay Wang $1,885.00 of the wages they had promised to pay her ($1,885.00 for September 2025).

81.     Defendants did not pay Wang her $1,885.00 in unpaid wages on or before her last regular payday, to wit, September 30, 2025.

82.    Defendants have not as of this writing paid Wang her $1,885.00 in unpaid wages.

83.    Throughout her employment, Defendants' customers tipped Wang, on average, about $200.00 per day.

84.    Throughout her employment, Defendants withheld, and retained for themselves, all of Wang's tips, amounting to about $3,400.00 for her 17 days of work.

### *DEFENDANTS' COMPLAINED-OF ACTS AND OMISSIONS WERE WILLFUL*

85.    Defendants' wage-handling and other employment practices were marked by a persistent knowledge, or reckless disregard, that their conduct violated the FLSA and other statutes.

86.    Defendants designated Plaintiffs' paydays to be once per month and not twice per month under Tex. Lab. C. § 61.011, as if Plaintiffs were exempt from the FLSA's overtime pay provisions, when in fact Plaintiffs were non-exempt manual workers.

87.    Defendants paid Mou partially, and Wang entirely, off the books in cash.

88.    Defendants did not keep or maintain all records required by 29 C.F.R. § 516.2 with respect to Plaintiffs, and in particular of Plaintiffs' days and/or hours worked per week, so that they could fail to acknowledge their presence for their extended work hours each week (for Mou, typically, 57 hours per week; for Wang, typically, 64.5 hours per week).

89.    Defendants did not post and keep posted on their business's premises a notice explaining the provisions of the FLSA, in English or in Plaintiffs' primary language of Chinese or otherwise, in order to deprive employees of knowledge of their rights under the FLSA and of ability to enforce them.

### COLLECTIVE ALLEGATIONS

90.    Plaintiffs bring their FLSA claims individually and on behalf of all other current and former non-exempt workers employed by Defendants at Sichuan Joy and 369 BBQ over the

three (3) years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

**STATEMENT OF CLAIMS**

**COUNT I.**
**VIOLATION OF 29 U.S.C. § 206(a)(1)(C)—FAILURE TO PAY MINIMUM WAGE BROUGHT BY PLAINTIFFS, ON BEHALF OF THE COLLECTIVE, AGAINST DEFENDANTS**

91.     Plaintiffs re-allege and incorporate by reference all factual averments as though fully set forth herein.

92.     Section 206(a) of the FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed n an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than—… (C) $7.25 an hour, beginning 24 months after th[e] 60th day [after May 27, 2007]…."

93.     Mou's compensation in April 2025 ($523.00/month * 12 months/year / 52 weeks/year / 57 hours/week = $2.12/hour), July 2025 ($1,300.00/month * 12 months/year / 52 weeks/year / 57 hours/week = $5.26/hour), August 2025 ($0.00/month * 12 months/year / 52 weeks/year / 57 hours/week = $0.00/hour), and September 2025 ($0.00/month * 12 months/year / 52 weeks/year / 57 hours/week = $0.00/hour) amounted to less per hour than the federal minimum hourly wage of $7.25/hour.

94.     Wang's compensation in September 2025 (for week beginning September 1, 2025, $0.00/month * 12 months/year / 52 weeks/year / 64.5 hours/week = $0.00/hour; for week beginning September 8, 2025, $0.00/month * 12 months/year / 52 weeks/year / 10.75 hours/week = $0.00/hour) amounted to less per hour than the federal minimum hourly wage of $7.25/hour.

95.     Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206… of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

96.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Plaintiffs at least the federal minimum wage for each hour worked.

### COUNT II.
### VIOLATION OF 29 U.S.C. § 207(a)(1)—FAILURE TO PAY OVERTIME BROUGHT BY PLAINTIFFS, ON BEHALF OF THE COLLECTIVE, AGAINST DEFENDANTS

97.     Plaintiffs re-allege and incorporate by reference all factual averments as though fully set forth herein.

98.     Section 207(a)(1) of the FLSA provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

99.     Throughout his employment, Mou's compensation failed to include additional pay, at one-half times the greater of the federal minimum wage and his regular hourly wage, for his hours worked in excess of 40 hours per week.

100.    Throughout her employment, Wang's compensation failed to include additional pay, at one-half times the greater of the federal minimum wage and her regular hourly wage, for her hours worked in excess of 40 hours per week.

101.    Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

102.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Plaintiffs overtime.

**COUNT III.**
**VIOLATION OF 29 U.S.C. § 203(m)(2)(B)—FAILURE TO PAY OVERTIME**
**BROUGHT BY PLAINTIFF WANG, ON BEHALF OF THE COLLECTIVE, AGAINST**
**DEFENDANTS**

103.    Plaintiffs re-allege and incorporate by reference all factual averments as though fully set forth herein.

104.    Section 203(m)(2)(B) of the FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

105.    Throughout her employment, Defendants' customers tipped Wang, on average, about $200.00 per day.

106.    Throughout her employment, Defendants withheld, and retained for themselves, all of Wang's tips, amounting to about $3,400.00 for her 17 days of work.

107.    Section 216(b) of the FLSA provides that "[a]ny employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

108.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Wang overtime.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of others similarly situated, respectfully request that this Court enter a judgment providing the following relief:

A.    At the earliest practicable time giving notice of this collective action, or authorizing Plaintiffs to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied overtime pay;

B.    A declaratory judgment that the practices complained of herein are unlawful under FLSA;

C.    An injunction against LLC Defendants, their members, managers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, including but not limited to the Individual Defendants, from engaging in each of the unlawful practices and policies set forth herein;

D.      An award of unpaid minimum wages, and either liquidated damages equal to unpaid minimum wages or prejudgment interest on unpaid minimum wages, due to Plaintiffs and any applicable opt-ins under FLSA;

E.      An award of unpaid overtime, and either liquidated damages equal to unpaid overtime or prejudgment interest on unpaid overtime, due to Plaintiffs and any applicable opt-ins under FLSA;

F.      An award of withheld tips, and either liquidated damages equal to withheld tips or prejudgment interest on withheld tips, due to Wang and any applicable opt-ins under the FLSA;

G.      An award of post-judgment interest under the FLSA;

H.      An award of reasonable attorneys' fees and costs under FLSA; and

I.      Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated:  Flushing, NY
        February 9, 2026

TROY LAW, PLLC

/s/ Tiffany Troy
Tiffany Troy, Esq.
Aaron B. Schweitzer, Esq.
John Troy, Esq.
TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
Phone (718) 762-1324
Fax (718) 762-1342
troylaw@troypllc.com
*Attorneys for Plaintiffs*
*John Troy, Esq. and Aaron B. Schweitzer, Esq. to be admitted* pro hac vice